IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTORIA WHEELER, *et al.*, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MATERIAL RECOVERY OF ERIE, INC., *et al.*, )<br>)<br>)<br>Defendants. ) | C.A. No. 06-85 Erie<br>District Judge McLaughlin |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

This matter is before the Court upon a Motion to Dismiss or, in the alternative, for Summary Judgment, filed by Defendants' Northwest Pennsylvania Trail Association and Material Recovery of Erie, Inc., as well as Motions to Dismiss filed by Defendant FirstEnergy Corp and by Defendant Canadian National Railway.[1]

I.   BACKGROUND

   A.   The Federal Railbanking Law

In 1983, Congress enacted Section 8(d) of the National Trails Systems Act, 16 U.S.C. § 1247(d) (hereinafter, the "Railbanking Act") to preserve the country's rapidly disappearing railway corridor infrastructure for future rail service and energy efficient transportation uses by permitting inactive corridors to be used on an interim basis as trails. The Railbanking Act is triggered when a railroad desires to terminate its common carrier obligation to provide freight rail service on a line,

---

[1] Given our ultimate decision to refer this matter to the Surface Transportation Board for the reasons discussed *infra*, we do not address the merits of the other arguments advanced by FirstEnergy and Canadian National Railway.

an action requiring approval from the Surface Transportation Board ("STB").[2] 49 U.S.C. § 10903. When a qualified entity desires to negotiate with the railroad concerning the preservation of a corridor for future rail and interim trail use, it must request that the STB issue a railbanking order (known as a Certificate of Interim Trail Use ("CITU") or, as in this case, a Notice of Interim Trail Use ("NITU") by filing a statement of willingness to assume legal or financial responsibility over the corridor until such time as it is needed again for rail service. 49 C.F.R. § 1152.29(a).

Railbanking is voluntary on the part of the railroad. The Railbanking Act does not require the railroad to transfer the right of way for that purpose, nor impose any new obligations or restrictions on the railroads. Rather, it allows the railroad to choose to discontinue rail operations "for an indefinite period while preserving the rail corridor for possible reactivation of service in the future," Preseault v. ICC, 494 U.S. 1, 6 n.3 (1990), or to fully abandon the right of way and thereby permit state laws of reversion to take effect. Where a NITU or CITU is issued and a railbanking agreement is concluded, the corridor remains subject to the federal authority of the STB for so long as the trail use continues, and the corridor remains intact and potentially available for reactivated rail service. Birt v. STB, 90 F.3d 580, 583 (D.C. Cir. 1996).

### B.     Factual Background

This case involves a six-mile long strip of land (the "Trail") that, prior to 1973, served a railway line owned and operated by Penn Central Railroad. Penn Central did not hold title to the land in fee simple, but rather, according to Plaintiffs, possessed an easement for railroad purposes, obtained by condemnation awards and releases. The Plaintiffs are the owners of the parcels of land adjacent to the Trail, as well as possessors of the reversionary interests in the Trail itself.

In 1973, Penn Central petitioned for, and was granted, permission to abandon service on the line. (Complaint ¶ 17). In 1976, Penn Central quitclaimed the Trail and the railway line to

---

[2]     Prior to the creation of the STB by Congressional act effective January 1, 1996, this role was filled by the Interstate Commerce Commission.

Bessemer & Lake Erie ("B&LE"), a subsidiary of Defendant Canadian National Railway. From 1976 until 1989, the Trail remained unused. (Complaint ¶ 21).

In August, 1989, B&LE entered into a contingent agreement with Defendant Material Recovery to convey its quitclaim interest in the Trail to Material Recovery as part of the process of railbanking the Trail. (Complaint ¶22). On January 8, 1990, the Surface Transport Board ("STB") granted a NITU to B&LE and, subsequently, the Trail was properly railbanked and transferred to Material Recovery. (See January 8, 1990 Decision of the Interstate Commerce Commission ("1990 ICC Decision"), Complaint, Ex. B; Complaint ¶ 24). From 1990 to 1997, Material Recovery salvaged what remained of the railway line and removed the underlying fill, but, according to Plaintiffs, never developed hiking or biking trails on the Trail. (Complaint ¶ 25).

In 1997, Material Recovery entered into bankruptcy and, as part of the bankruptcy proceeding, sought leave to grant the Pennsylvania Electric Company ("Penelec") a utility easement over the Trail. (Complaint ¶ 26; Complaint, Ex. D). While in bankruptcy, the Plaintiffs intervened in the bankruptcy proceeding and asserted that their reversionary interests in the Trail's right of way had vested prior to 1990 as a result of the railway line falling out of use. (Complaint ¶ 27). The Bankruptcy court referred the Plaintiffs' challenge to Material Recovery's ownership of the Trail to the STB and, in 1997, the STB reopened the 1990 proceedings and issued a decision clarifying and re-affirming the railbanked status of the Trail.

Essentially, the STB reviewed the history of the Trail described above and concluded that, in 1990, the Trail had been properly railbanked. (1997 Decision of the Surface Transportation Board ("1997 STB Decision"), Complaint, Ex. C). It further stated that, "[b]ased on the evidence presented, we conclude that the property has not reverted to adjacent landowners." (Id). The STB couched its decision as an "advisory opinion" because it recognized that the property was under the jurisdiction of the bankruptcy court, and that, therefore, the final determination of legal ownership rested with that court. The STB further observed that "any agreement of sale between [Materials Recovery and Penelec] would require the continued preservation of the right-of-way for recreational

use by the public or for reconversion to rail use" and that "to ensure continued rail banked status of the right-of-way, [Materials Recovery and Penelec] must comply with 49 C.F.R. 1152.29(f) . . .". (Id). The Opinion, thereafter, quoted the applicable regulation, which provides that:

> (1) When a trail user intends to terminate trial use and another person intends to become a trail user by assuming financial responsibility for the right-of-way, then the existing and future trail users shall file, jointly:
>
>> (i)   A copy of the extant CITU or NITU; and
>>
>> (ii)  A Statement of Willingness to Assume Financial Responsibility by the new trail user.
>
> (2) The parties shall indicate the date on which responsibility for the right-of-way is to transfer to the new trial user. The Board will reopen the abandonment or exemption proceeding, vacate the existing NITU or CITU; and issue an appropriate replacement NITU or CITU to the new trail user.

(Id). (citing 49 C.F.R.1152.29(f)).

Ultimately, the bankruptcy court permitted Material Recovery to sell a utility easement over the Trail right-of-way to Penelec, but declined to make a determination as to ultimate ownership. (Bankruptcy Court Order, Complaint, Ex. D).

In 2005, Material Recovery and the Northwest Pennsylvania Trail Association ("NWPTA") entered into an agreement whereby the NWPTA purchased property other than the Trail from Material Recovery. In addition, the parties entered into a separate agreement styled a "Donation Agreement" that contemplated the future donation of the Trail to NWPTA on or before January 3, 2006. (Agreement of Sale and Donation Agreement, Defendants' Concise Statement of Material Facts, Exs. D and E). Due in large measure to the pendency of this lawsuit, the Trail was never donated pursuant to the terms of the Donation Agreement.

On April 11, 2006, Plaintiffs filed this suit, alleging that Materials Recovery and the NWPTA had violated the provisions of 49 C.F.R. 1152.29(f) by transferring ownership of the Trail

without fulfilling the regulatory requirements described therein. Plaintiffs assert jurisdiction under 28 U.S.C. § 1336(a) and 28 U.S.C. § 1331.

### II.   STANDARD FOR REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita, 475 U.S. at 587).

### III.   ANALYSIS

The engine that drives the present suit is the Plaintiffs' conviction that, prior to 1990, the various properties comprising the Trail had been legally abandoned under Pennsylvania state such that their reversionary interests were triggered. In essence, they believe that the Trail was improperly railbanked in 1990, and that, therefore, the 1997 STB decision erred in re-affirming the Trail's railbanked status. (See Plaintiffs' Memorandum in Response to Defendants' Motion to Dismiss ("Memo in Response"), Dkt. # 15, pp. 18-21).

However, pursuant to 28 U.S.C. §§ 2321 and 2342(5), an order of the STB is subject to exclusive review in the United States Court of Appeals in the Circuit within which the property is

located. Id. "The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of (5) all rules, regulations, or final orders of the Surface Transportation Board made reviewable by section 2321 of this title." 28 U.S.C. § 2342(5). Thus, absent a timely appeal to the appropriate Circuit Court, an STB order cannot be directly or collaterally attacked in any other court. See B.F. Goodrich Co. v. Northwest Industries, Inc., 424 F.2d 1349, 1352-53 (3rd Cir. 1970).

Having failed to perfect a timely appeal of the 1990 ICC and 1997 STB orders to the Court of Appeals for the Third Circuit, Plaintiffs rely on 28 U.S.C. § 1336(a), which states that "the district courts shall have jurisdiction of any civil action to enforce, in whole or in part, any order of the Surface Transportation Board. . ." Id. In this instance, Plaintiffs are seeking to enforce the directive in the 1997 STB advisory opinion that required the parties to comply with the applicable regulatory provision for a transfer of ownership of a railbanked property, 49 C.F.R. 1152.29(f). Counsel for Plaintiff conceded this point at oral argument:

> The Court: As I understand it, your position is that the NWPTA and Material Recovery are in violation of the language at page 2 of [the 1997 STB order], which sets forth the language of 49 C.F.R. 1152.29, is that correct?
>
> Counsel: That and similar language from the 1990 as well.

(Transcript of Hearing on Motion to Dismiss ("Transcript"), January 18, 2007, p. 28).

This regulatory provision, as described above, requires the STB to "reopen the abandonment or exemption proceeding" as part of the procedure for transferring ownership of a railbanked property to a new trail user. By filing this suit under § 1336(a), Plaintiffs essentially seek a declaration that Material Recovery and the NWPTA violated the 1997 Order by transferring ownership without complying with the cited portion of 49 C.F.R. 1152(f) and that, as a result of this violation, the Trail has been abandoned.

> The Court: Is it fair to say that primarily, and we'll talk about other issues if you think it necessary, but is it fair to say that primarily what the

located. Id. "The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of (5) all rules, regulations, or final orders of the Surface Transportation Board made reviewable by section 2321 of this title." 28 U.S.C. § 2342(5). Thus, absent a timely appeal to the appropriate Circuit Court, an STB order cannot be directly or collaterally attacked in any other court. See B.F. Goodrich Co. v. Northwest Industries, Inc., 424 F.2d 1349, 1352-53 (3rd Cir. 1970).

Having failed to perfect a timely appeal of the 1990 ICC and 1997 STB orders to the Court of Appeals for the Third Circuit, Plaintiffs rely on 28 U.S.C. § 1336(a), which states that "the district courts shall have jurisdiction of any civil action to enforce, in whole or in part, any order of the Surface Transportation Board. . ." Id. In this instance, Plaintiffs are seeking to enforce the directive in the 1997 STB advisory opinion that required the parties to comply with the applicable regulatory provision for a transfer of ownership of a railbanked property, 49 C.F.R. 1152.29(f). Counsel for Plaintiff conceded this point at oral argument:

> The Court: As I understand it, your position is that the NWPTA and Material Recovery are in violation of the language at page 2 of [the 1997 STB order], which sets forth the language of 49 C.F.R. 1152.29, is that correct?
>
> Counsel: That and similar language from the 1990 as well.

(Transcript of Hearing on Motion to Dismiss ("Transcript"), January 18, 2007, p. 28).

This regulatory provision, as described above, requires the STB to "reopen the abandonment or exemption proceeding" as part of the procedure for transferring ownership of a railbanked property to a new trail user. By filing this suit under § 1336(a), Plaintiffs essentially seek a declaration that Material Recovery and the NWPTA violated the 1997 Order by transferring ownership without complying with the cited portion of 49 C.F.R. 1152(f) and that, as a result of this violation, the Trail has been abandoned.

> The Court: Is it fair to say that primarily, and we'll talk about other issues if you think it necessary, but is it fair to say that primarily what the

>plaintiff is seeking to do here is enforce in this court the 1997 order of the STB, and in seeking to enforce that order, asking for a declaration from me that there has been noncompliance, material noncompliance with its terms and conditions?
>
>Counsel: That's primarily what we're concerned with.

(See Transcript, p. 25).

While we acknowledge that 28 U.S.C. § 1336 properly vests jurisdiction in this Court to enforce the 1997 STB Order, our jurisdiction to determine whether there has been a violation of the regulatory provisions cited therein is not exclusive. In their summary judgment motion, Defendants' argue that primary jurisdiction for claims arising from 49 C.F.R. 1152.29 rests with the STB and that, accordingly, it would be proper to refer this matter to the STB for determination. Primary jurisdiction is a legal doctrine pursuant to which Courts may refer matters within the specialized purview of an administrative agency to that agency. United States v. Western Pac. R.R., 352 U.S. 59, 63-64 (1956). A referral is particularly appropriate where the issue involved implicates the specialized knowledge of an administrative agency and when the referral would help maintain uniformity in decision making. Atlantis Express, Inc. v. Standard Transp. Servs., Inc., 955 F.2d 529, 532-33 (8th Cir. 1992).

Each of the issues raised - whether the Donation Agreement and subsequent use of the Trail by the NWPTA triggered the requirements of 49 C.F.R. 1152.29, whether 1997 STB Order has been violated, and, ultimately, and whether either of those events might result in an abandonment and reversion of the Trail to the Plaintiff property owners - are precisely the type of issues that the STB routinely considers. See, e.g., Barclay v. U.S., 443 F.3d 1368, 1374 (Fed. Cir. 2006) ("The disposition of reversionary interests [is] subject to the [STB's] exclusive and plenary jurisdiction to regulate abandonments of railroad rights of way."); Grantwood Village v. Missouri Pacific R. Co., 95 F.3d 654, 657 (8th Cir. 1996) ("The ICC has exclusive and plenary authority to determine whether a rail line has been abandoned. . . "). Plaintiffs do not dispute that a referral to the STB would be

appropriate here, but instead argue that practical considerations should militate against it, as demonstrated by the following exchange:

> The Court: Who better, particularly given the intricacies of the Railbanking Act, if you will, and it is a rather, let's just say it's somewhat of a niche in the overall regulatory scheme, who better to determine what was meant by its own order, and who better to determine whether there has or has not been compliance with the provisions of the Railbanking Act . . . than the very entity whose resonsibility it is on a weekly basis to determine whether parties are or are not in compliance; isn't it the STB, rather than this court?
>
> Counsel: In this particular case the District Court is going to have to, in the event that there's an appeal, make a final decision based on a number of the same arguments, and it's more a matter of a practical matter related to a financial concern for both parties, frankly, I think.
>
> The Court: . . . . It really isn't your position, is it, that under all the facts here, the STB does not possess certain unique expertise here, which all things being equal, it would be appropriate to go to. It really is your position that, look it, judge, this has been going on for a lot of years and the shortest distance between two points is a decision by you, rather than you deferring in the first distance to the STB?
>
> Counsel: I could not have put it better myself.

(Transcript, pp. 37-38).

We are certainly not unmindful of these concerns. Nonetheless, in light of the STB's institutional knowledge of this particular case as a result of having considered these issues in both 1990 and 1997, their familiarity with their own 1990 and 1997 orders, and their general experience in dealing with issues of this nature, we find that the benefits of referring this matter to the STB significantly outweigh the burdens.

**IV.   CONCLUSION**

For the foregoing reasons, the Defendants' respective motions to dismiss or, in the alternative, for summary judgment are DENIED and this matter is referred to the Surface Transportation Board for further proceedings.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTORIA WHEELER, *et al.*, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | C.A. No. 06-85 Erie |
| ) | District Judge McLaughlin |
| MATERIAL RECOVERY OF ERIE, INC., *et al.*, ) | |
| ) | |
| ) | |
| Defendants. ) | |

### ORDER

AND NOW, this 30th day of March, 2007, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Defendants' Material Recovery of Erie, Inc., *et al.*, the Motion to Dismiss filed by Defendant FirstEnergy, and the Motion to Dismiss filed by Defendant Canadian National Railway, are DENIED. This matter is referred to the Surface Transportation Board for further proceedings.

IT IS FURTHER ORDERED that the clerk of Court is Directed to mark this case closed.


/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record.. nk