## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTORIA WHEELER, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 06-85 Erie |
| | ) | District Judge McLaughlin |
| MATERIAL RECOVERY OF ERIE, INC., *et al.*, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SURFACE TRANSPORTATION BOARD, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

Presently pending before the Court is the Plaintiffs' Petition for Review of STB Decision (hereinafter "Petition").[1]  All Defendants, including the Surface Transportation Board, have filed responses in opposition to the Plaintiff's Petition.  For the reasons that follow, Plaintiffs' Petition will be denied.

### I.  BACKGROUND

#### A.     The Federal Railbanking Act

In 1983, Congress enacted Section 8(d) of the National Trails Systems Act, 16 U.S.C. § 1247(d) (hereinafter, the "Railbanking Act") to preserve the country's rapidly disappearing railway corridor infrastructure for future rail service and energy efficient transportation uses by permitting

---

[1]     The Surface Transportation Board ("STB") is the agency charged under the Interstate Commerce Act, 49 U.S.C. 10101, with regulating rail carriers that provide transportation over any part of the interstate rail network.  Prior to the creation of the STB by Congressional act effective January 1, 1996, this role was filled by the Interstate Commerce Commission ("ICC").

inactive corridors to be used on an interim basis as trails.  The Railbanking Act is triggered when a railroad desires to terminate its common carrier obligation to provide freight rail service on a line, an action requiring approval from the Surface Transportation Board ("STB").  49 U.S.C. § 10903. When a qualified entity desires to negotiate with the railroad concerning the preservation of a corridor for future rail and interim trail use, it must request that the STB issue a railbanking order (known as a Certificate of Interim Trail Use ("CITU") or, as in this case, a Notice of Interim Trail Use ("NITU")) by filing a statement of willingness to assume legal or financial responsibility over the corridor until such time as it is needed again for rail service.  49 C.F.R. § 1152.29(a).  Where a NITU or CITU is issued and a railbanking agreement is reached between a railroad and a trail sponsor, the corridor remains subject to the federal authority of the STB for so long as the trail use continues, and the corridor remains intact and potentially available for reactivated rail service.  Birt v. STB, 90 F.3d 580, 583 (D.C. Cir. 1996).

A trail sponsor may transfer an interim trail use authorization to another trail sponsor by submitting to the STB a copy of the governing NITU, a statement of willingness from the proposed trail sponsor to assume financial responsibility for the trail, and the date on which responsibility for the interim trail will transfer.  See 49 CFR 1152.29(f)(1).  Upon such request, the STB will reopen the abandonment proceeding, vacate the existing NITU, and issue a new NITU reflecting that the new trail sponsor is now responsible for the trail.  Id.

Railbanking is voluntary on the part of the railroad.  The Railbanking Act does not require the railroad to transfer the right of way for that purpose, nor impose any new obligations or restrictions on the railroads.  Rather, it allows the railroad to choose either to discontinue rail operations "for an indefinite period while preserving the rail corridor for possible reactivation of service in the future," Preseault v. ICC, 494 U.S. 1, 6 n.3 (1990), or to fully abandon the right of way and thereby permit state laws of reversion to take effect.

Prior to discontinuing service and abandoning a railway line, a railroad must obtain authorization from the STB.  Such authorization, once granted, is permissive, rather than mandatory.

Thus, to consummate an abandonment and trigger reversionary interests, the railroad must take further action manifesting a clear objective intent to abandon. See Lucas v. Township of Bethel, 319 F.3d 595, 603 n. 11 (3rd Cir. 2003); Birt, 90 F.3d at 585. For abandonments authorized after January 23, 2007, STB rules require railroads to file a letter notifying the STB and the public within one year after the effective date of the authorization or 60 days after an STB decision terminating interim trail use when the railroad exercises the authority to abandon. See 49 CFR 1152.29(e)(2). Once abandonment is fully consummated, the railway line is no longer part of the interstate rail network and is removed from the STB's jurisdiction. Birt, 90 F.3d at 585.

### B.  Factual Backdrop of this Case

This case involves a six-mile long strip of land (the "Trail") that, prior to 1973, served a railway line owned and operated by Penn Central Railroad. Penn Central did not hold title to the land in fee simple, but rather, according to Plaintiffs, possessed an easement for railroad purposes, obtained by condemnation awards and releases. The Plaintiffs are the owners of the parcels of land adjacent to the Trail, as well as possessors of the reversionary interests in the Trail itself.

In 1973, Penn Central petitioned for, and was granted, permission to abandon service on the line. (Complaint ¶ 17). In 1976, Penn Central quitclaimed the Trail and the railway line to Bessemer & Lake Erie ("B&LE"), a subsidiary of Defendant Canadian National Railway. From 1976 until 1989, the Trail remained unused. (Complaint ¶ 21).

In August, 1989, B&LE entered into a contingent agreement with Defendant Material Recovery to convey its quitclaim interest in the Trail to Material Recovery as part of the process of railbanking the Trail. (Complaint ¶22). On January 8, 1990, the Surface Transport Board ("STB") granted a NITU to B&LE and, subsequently, the Trail was railbanked and transferred to Material Recovery. (See January 8, 1990 Decision of the Interstate Commerce Commission ("1990 ICC Decision"), Complaint, Ex. B; Complaint ¶ 24). From 1990 to 1997, Material Recovery salvaged

what remained of the railway line and removed the underlying fill, but, according to Plaintiffs, never developed hiking or biking trails on the Trail.  (Complaint ¶ 25).

In 1997, Material Recovery had entered into bankruptcy and, as part of the bankruptcy proceeding, sought leave to grant the Pennsylvania Electric Company ("Penelec") a utility easement over the Trail.  (Complaint ¶ 26; Complaint, Ex. D).  The Plaintiffs subsequently intervened in the bankruptcy proceeding and objected to the proposed sale, raising for the first time the argument that their reversionary interests in the Trail's right of way had vested prior to 1990 as a result of the railway line falling out of use.  (Complaint ¶ 27).  The Bankruptcy court referred the Plaintiffs' challenge to Material Recovery's ownership of the Trail to the STB.  In 1997, the STB reopened the 1990 proceedings and issued a decision clarifying and re-affirming the railbanked status of the Trail. The STB reviewed the history of the Trail described above and concluded that, in 1990, the Trail had been properly railbanked.  (1997 Decision of the Surface Transportation Board ("1997 STB Decision"), Complaint, Ex. C).  It further stated that, "[b]ased on the evidence presented, we conclude that the property has not reverted to adjacent landowners."  (Id).  The STB couched its decision, however, as an "advisory opinion" because it recognized that the property was under the jurisdiction of the bankruptcy court, and that, therefore, the final determination of legal ownership rested with that court.  The STB further observed that "any agreement of sale between [Materials Recovery and Penelec] would require the continued preservation of the right-of-way for recreational use by the public or for reconversion to rail use" and that "to ensure continued railbanked status of the right-of-way, [Materials Recovery and Penelec] must comply with 49 C.F.R. 1152.29(f)."  (Id). That regulation provides in pertinent part:

> (1) When a trail user intends to terminate trial use and another person intends to become a trail user by assuming financial responsibility for the right-of-way, then the existing and future trail users shall file, jointly:
>
> (i)     A copy of the extant CITU or NITU; and
>
> (ii)    A Statement of Willingness to Assume Financial Responsibility by the new trail user.

(2) The parties shall indicate the date on which responsibility for the right-of-way is to transfer to the new trial user. The Board will reopen the abandonment or exemption proceeding, vacate the existing NITU or CITU; and issue an appropriate replacement NITU or CITU to the new trail user.

(Id). (citing 49 C.F.R.1152.29(f)). Ultimately, the bankruptcy court permitted Material Recovery to sell a utility easement over the Trail right-of-way to Penelec, but declined to make a determination as to ultimate ownership. (Bankruptcy Court Order, Complaint, Ex. D). Plaintiffs did not appeal the STB's decision of 1997.

In 2005, Material Recovery and the Northwest Pennsylvania Trail Association ("NWPTA") entered into an agreement whereby the NWPTA purchased property unrelated to the Trail from Material Recovery. In addition, the parties entered into a separate agreement styled a "Donation Agreement" that contemplated the future donation of the Trail to NWPTA on or before January 3, 2006. (Agreement of Sale and Donation Agreement, Defendants' Concise Statement of Material Facts, Exs. D and E) ("Donation Agreement"). The Donation Agreement provided that Material Recovery's "obligation to transfer the property [was] contingent on . . . completion of all necessary railbanking documents and filings with the [STB] to preserve the property's interim trail status." Until such time as the proper STB authorization could be obtained, the Donation Agreement provided that NWPTA would lease and maintain the right-of-way, pay the real estate taxes, and indemnify Material Recovery for any liability associated with the Trail's use.

On April 11, 2006, Plaintiffs filed the instant action, alleging that Materials Recovery and the NWPTA had violated the provisions of 49 C.F.R. 1152.29(f) resulting in an abandonment of the property and the triggering of Plaintiffs' reversionary interests. Given the procedural impediments occasioned by their failure to have appealed either the 1990 or 1997 STB Orders, Plaintiffs styled their action as one to *enforce* the 1997 Order, specifically, the directive in the 1997 STB advisory opinion that required the parties to comply with the applicable regulatory provision for a transfer of ownership of a railbanked property, 49 C.F.R. 1152.29(f). (See Transcript of Hearing on Motion to

Dismiss ("Transcript"), January 18, 2007, p. 28).  Defendants moved for dismissal and/or summary judgment.

On March 30, 2007, this Court issued a Memorandum Order and Opinion noting that:

> Each of the issues raised - whether the Donation Agreement and subsequent use of the Trail by the NWPTA triggered the requirements of 49 C.F.R. 1152.29, whether 1997 STB Order has been violated, and, ultimately, and whether either of those events might result in an abandonment and reversion of the Trail to the Plaintiff property owners - are precisely the type of issues that the STB routinely considers.  See, e.g., Barclay v. U.S., 443 F.3d 1368, 1374 (Fed. Cir. 2006) ("The disposition of reversionary interests [is] subject to the [STB's] exclusive and plenary jurisdiction to regulate abandonments of railroad rights of way."); Grantwood Village v. Missouri Pacific R. Co., 95 F.3d 654, 657 (8th Cir. 1996) ("The ICC has exclusive and plenary authority to determine whether a rail line has been abandoned. . . ").

Accordingly, Plaintiffs' action was remanded to the STB in order to utilize their "institutional knowledge of this particular case as a result of having considered these issues in both 1990 and 1997, their familiarity with their own 1990 and 1997 orders, and their general experience in dealing with issues of this nature."  Id.

Pursuant to the referral, Plaintiffs filed a Petition for Declaratory Order in STB Finance Docket No. 35082, *Victor Wheeler, et al. - Petition for Declaratory Order - Rail Line in Erie County, PA*.  In that action, Plaintiffs pressed several arguments before the Board in support of their contention that the Trail had been abandoned and that their reversionary interests had been triggered.  First, Plaintiffs asserted that Material Recovery transferred the property to a new trail sponsor, NWPTA, without complying with 49 C.F.R. 1152.29(f) resulting in an abandonment of the property and the triggering of Plaintiffs' reversionary interests.  They also alleged that Material Recovery failed to meet its financial responsibilities in various particulars relative to the Trail, again allegedly resulting in an abandonment and a corresponding reversion of their property interests.  Finally, Plaintiffs reiterated the argument that they had advanced in the 1997 STB proceeding that the right of way had been abandoned by Penn Central prior to 1990 and, therefore, the 1990 NITU had been improperly issued.

Shortly thereafter, Material Recovery and NWPTA filed a motion to reopen the 1990 proceeding, AB-88 (Sub-No. 5X), to substitute NWPTA as the trail sponsor pursuant to the transfer provisions of 49 CFR 1152.29(f).  In conjunction therewith, NWPTA submitted the appropriate statement of willingness to assume financial responsibility for the trail, as per the regulations. Plaintiffs opposed the motion and also requested discovery and oral argument relative to both matters.

On August 27, 2008, the STB issued a single decision with respect to the issues raised under both docket numbers.  (See Decision, STB Finance Docket No. 35082, August 27, 2008) ("2008 STB Decision").  In so doing, the STB explicitly noted that the proceedings had not been consolidated; rather, a single decision was issued purely for administrative convenience.  (See 2008 STB Decision, p. 1, n.1).

The STB rejected each of the claims asserted by Plaintiffs' in their Petition for Declaratory Order, Docket No. 35082.  With respect to the merits of Plaintiffs' claims, the STB first concluded that the railroad line had not been abandoned prior to being railbanked in 1990.  The STB noted that Plaintiffs were not presenting new evidence or alleging changed circumstances based upon any activity that had occurred prior to the 1990 railbanking and, accordingly, treated this claim as being based upon material error.  (Id. at 6).  The STB reiterated that the right of way had not been abandoned prior to 1990 and that, therefore, the STB properly exercised jurisdiction over the line in issuing the 1990 NITU.  (Id. at 7).

The STB also rejected Plaintiffs' allegation that Material Recovery had failed to meet its financial obligations relative to the Trail.  The STB concluded that this claim was based solely upon a 1999 letter indicating that Material Recovery had not paid taxes on the property in 1998.  The STB held that this isolated instance of a failure to pay county taxes from ten years ago "does not constitute sufficient evidence to support a finding that [Material Recovery] has failed, or is likely to fail, to meet its financial and legal obligations."

Finally, the STB considered and rejected Plaintiffs' contention that Material Recovery and NWPTA had violated the provisions of 49 CFR 1152.29(f) by improperly transferring ownership of the Trail without Board approval.  In so doing, the STB found that the Donation Agreement provided for the NWPTA to use the Trail as a lessee prior to transfer, with Material Recovery remaining the responsible financial party at all times.  It further concluded that, pursuant to the terms of the Agreement, ownership did not transfer until STB approval had been procured.  The STB thus denied relief on all grounds in STB Finance Docket No. 35082.

In Docket No. AB-88 (Sub-No. 5X), the STB approved the joint motion by Material Recovery and NWPTA to substitute the latter as the new trail sponsor pursuant to the Donation Agreement between the parties.  The trail substitution was deemed to have complied with the trail use transfer requirements of § 1152.29(f), and the duties incumbent upon a trail sponsor were shifted from Material Recovery to NWPTA.  The STB accordingly reopened Docket No. AB-88 (Sub-No. 5X) "to the limited extent of replacing the NITU served on January 8, 1990, with a replacement NITU substituting NWPTA as interim trail sponsor."

The STB also rejected Plaintiffs' request for discovery and oral argument, noting that "[d]iscovery is not typically conducted in declaratory order proceedings; moreover, presumably [Plaintiffs] have had ample opportunity to engage in discovery in the District Court proceeding and have not indicated what, if any, additional material they wish to obtain through discovery at this time."  (Id. at 5). The STB declined the request for an oral hearing because it concluded that "[Plaintiffs] have not demonstrated that there are any material matters in dispute that cannot be adequately considered and resolved based on written submissions." (Id)

On November 24, 2008, Plaintiffs filed the instant Petition pursuant to 28 U.S.C. 1336(b), which provides that a district court has jurisdiction to review an action to "enforce, enjoin, set aside, annul, or suspend" any order of the Board "arising out of" the court's referral.  Count I of the Petition challenges the STB's rejection of the Plaintiffs' contention that Material Recovery "failed to abide by their statutory and regulatory obligations and violated the 1990 and 1997 orders [of the STB],

which resulted in abandonment of interim trail use and should have resulted in revocation of the trail condition."   Count II contends that the STB failed to comply with its own regulations and acted arbitrarily and capriciously in denying oral argument and discovery, resulting in a violation of due process.   Finally, Count III asserts, once again, that the STB improperly issued an NITU in 1990 based on the contention that the railroad line had been abandoned prior thereto.   This matter is ripe for review.

## II.  JURISDICTION

An order of the STB is generally subject to exclusive review in the United States Court of Appeals in the Circuit within which the disputed property is located.   See 28 U.S.C. §§ 2321, 2342(5) ("The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of (5) all rules, regulations, or final orders of the Surface Transportation Board made reviewable by section 2321 of this title.")   28 U.S.C. 1336(b) provides, however, that "[w]hen a district court . . . refers a question or issue to the Surface Transportation Board for determination, the court which referred the question or issue shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the Surface Transportation Board arising out of such referral."   As noted above, this Court referred the allegations raised in the original complaint to the STB on March 30, 2007.   The STB Order that Plaintiffs challenge in the instant Petition arose from that referral.   Thus, pursuant to 28 U.S.C. 1336(b), jurisdiction to review that Order is properly with this Court.

## III.  STANDARD OF REVIEW

The STB may reopen a proceeding "at any time on its own initiative because of material error, new evidence, or substantially changed circumstances."   See Friends of Sierra Railroad, Inc. v. I.C.C., 881 F.2d 663, 666 (9th Cir. 1989) (quoting 49 U.S.C. § 10327(g)). The decision to grant

or deny a petition to reopen is within the broad discretion of the STB, and only on a showing of a clear abuse of that discretion should a court overrule the agency.  See, e.g., Bowman Transp. Inc. v. Arkansas Best Freight System, Inc., 419 U.S. 281, 294-95 (1974).  When the STB refuses to reopen a proceeding, a court's review is generally limited to consideration of the lawfulness of the refusal. See I.C.C. v. Brotherhood of Locomotive Engineers, 482 U.S. 270 (1987) ("BLE").  The court may review the refusal to reopen only "[i]f the petition that was denied sought reopening on the basis of new evidence or changed circumstances . . . otherwise, the agency's refusal to go back over ploughed ground is nonreviewable."  Id. at 284; see also Friends of Sierra Railroad, 881 F.2d at 666.  Thus, a refusal to reopen cannot be reviewed at all where the petition alleges only "material error."  Id.  The prohibition on review of denials of petitions to reopen alleging only material error "is jurisdictional, not merely prudential."  Friends of Sierra Railroad, 881 F.2d at 666 (citing BLE, 482 U.S. at 281-82).

Where review is not precluded, "we will review the Board's decision not to reopen the proceeding under the familiar arbitrary and capricious standard."  See Jost, 194 F.3d at 85 (citing 5 U.S.C. § 706(2)(A)).  Pursuant to 5 U.S.C. § 706(2)(A):

> The reviewing court shall . . . (2) hold unlawful and set aside agency action, findings, and conclusions found to be –
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law
>
> (B) contrary to constitutional right, power, privilege or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law;
>
> (E) unsupported by substantial evidence . . .

The United States Supreme Court has described the "arbitrary and capricious" standard in the context of agency review as follows:

> [T]he scope of review is narrow and the Court may not substitute its judgment for that of the ICC.  The Court must consider whether the agency decision was based on consideration of relevant factors and whether there has been a clear error of judgment.  Normally, an agency rule would be arbitrary or capricious if the agency has relied upon factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could be ascribed to a different view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins., 463 U.S. 29, 42 (1983) (internal citations and quotations omitted); see also F.P. Corp. v. Ken Way Transportation, Inc., 848 F.Supp. 1181, 1186 (E.D. Pa. 1994) (applying this standard to the I.C.C.)

## IV.  ANALYSIS

### A.    Improper Transfer/Failure to Meet Statutory Obligations

In Count I of the Petition, Plaintiffs first challenge the STB's rejection of their claim that the Trail had been improperly transferred from Material Recovery to NWPTA without the agency's approval, resulting in an automatic revocation of the extent NITU and subsequent abandonment.[2] 49 C.F.R. §1152.29(f) sets forth the regulatory provisions relative to the substitution of a trail sponsor as follows:

> (f)(1) When a trail user intends to terminate trail use and another person intends to become a trail user by assuming financial responsibility for the right-of-way, then the existing and future trail users shall file, jointly:
>
> (i) A copy of the extant CITU or NITU; and
>
> (ii) A Statement of Willingness to Assume Financial Responsibility by the new trail user.
>
> (2) The parties shall indicate the date on which responsibility for the right-of-way is to transfer to the new trail user.  The Board will reopen the abandonment or exemption proceeding, vacate the

---

[2]    Because the arguments underlying Count I involve allegations of changed circumstances, the STB's decision not to reopen the proceeding on this basis is subject to review.  BLE, 482 U.S. at 284.

existing NITU or CITU; and issue an appropriate replacement
NITU or CITU to the new trail user.

Id. The Donation Agreement between Material Recovery and NWPTA contained the following

language relative to the proposed transfer of the Trail:

> 1. Grantor shall convey the Property to Grantee on or before
> January 3, 2006 by Quitclaim deed, free and clear of all liens and
> encumbrances, except for restrictions of record as of the date of
> this Agreement, zoning ordinances, taxes and assessments not
> currently due and payable. *Grantor's obligation to transfer the
> property is contingent on the Grantees completion of all necessary
> railbanking documents and filings with the Surface Transportation
> Board to preserve the property's interim trail status*.
>
> 2. Effective immediately and at all times prior to this conveyance
> date in Paragraph 1 above, Grantor hereby leases the Property to
> Grantee to be used for any lawful purpose associated with the
> activities of Grantee. In consideration of this grant of lease,
> Grantee hereby covenants and agrees that it will maintain the
> Property and pay all real estate taxes associated with the Property
> . . . Grantee hereby agrees to indemnify and defend Grantor from
> any liability associated with the use of the property . . . and agrees
> to utilize the Property as a trail under the Pennsylvania Rails to
> Trails Act (32 Pa.C.S.A. §5611 et seq.) and thereby provide
> liability protection to both Grantor and Grantee as set forth at 32
> Pa.C.S.A. §5621.

(Donation Agreement, ¶¶ 1-2) (emphasis added).

Plaintiffs contend that the Donation Agreement violated the provisions of 49 C.F.R.

§1152.29(f) by effectively transferring managerial and financial responsibility for the trail to

NWPTA prior to the issuance of a new NITU. Plaintiffs point, for instance, to the provisions

binding NWPTA to pay all real estate taxes and assume all responsibilities and liabilities for the

Trail as reflective of a shift in ownership and control.

Here, the Donation Agreement explicitly conditioned the proposed transfer on obtaining

Board approval. The STB recognized that any responsibilities that the Donation Agreement shifted

to NWPTA were pursuant to the interim lease, rather than a sale or donation, leaving Material

Recovery ultimately responsible at all times until STB approval was procured:

> We do not find that the actions of MR and NWPTA have resulted in the abandonment of the line.  As noted, Congress passed the Trails Act in order to preserve railroad rights-of-way for future reactivation of rail services by providing a means for their interim use as trails.  Consistent with the intent of the Trails Act, the Donation Agreement preserves the subject right-of-way for interim trail use/rail banking by providing for the transfer of the right-of-way to NWPTA after our approval.  The lease arrangement permitting NWPTA to use and maintain the right-of-way and pay taxes in the meantime is a reasonable means for preserving the right-of-way for interim trail use/rail banking, with MR continuing to bear ultimate financial responsibility until approval of the transfer of the property is obtained.

STB Order, p. 11.  Simply put, the STB concluded that the provisions of 49 C.F.R. 1152.29(f) had not been violated because ultimate control and responsibility over the Trail had not shifted, and indeed could not shift under the Donation Agreement without explicit Board approval.  We find the STB's conclusion in this regard was well-reasoned and neither arbitrary, capricious, nor an abuse of discretion.[3]

Plaintiffs also contend under Count I of the Petition that the STB erred in rejecting the Plaintiffs' argument that Material Recovery's failure to have fulfilled its financial obligations under the Trails Act by failing to pay taxes on a portion of property in Girard Township during the tax year of 1998 triggered an abandonment of the Trail.  In Idaho Northern, the STB acknowledged that, "if a trail use arrangement is successfully negotiated and a landowner or other interested party presents evidence to call into question the continued application of the Trails Act, we would reopen the proceeding to afford the trail user an opportunity to demonstrate that it continues to meet the requirements of the statute."  Id. at 58-59.  Further, "if [it] determined that the trail group does not have the ability to meet the financial and liability conditions of the statute, the trail condition would be involuntarily revoked and the line declared fully abandoned . . .".  Id.  However, consistent with Congress' intent to "facilitate and encourage rail banking and interim trail use," the STB will

---

[3]     We note parenthetically that Plaintiffs cite no authority for their position that parties may not utilize an interim lease agreement to preserve a right-of-way for trail purposes while seeking approval for a full transfer from the STB.

13

presume that a sponsor is financially fit unless there is a "specific showing . . . that the trail sponsor has not met, or likely will not be able to meet, its financial obligations" pertaining to a trail.  Jost, 194 F.3d at 89-90.

Here, the STB ruled that the tax delinquency in 1998 did not constitute sufficient proof that Material Recovery could not meet its statutory obligations to:

> Petitioners claim that MR has "repeatedly" failed to meet its financial and legal obligations relating to the trail.  To support this assertion, Petitioners cite a single letter, dated November 10, 1999, from the Girard County Tax Collector stating that MR did not pay taxes for property located in the township of Girard during the tax year of 1998.  The letter cites only the tax year of 1998, which was shortly after MR declared bankruptcy, and it notes that information on the failure to pay was turned over to Erie County.
>
> This does not constitute sufficient evidence to support a finding that MR has failed, or is likely to fail, to meet its financial and legal obligations.  The sole instance of failure to pay county taxes cited by Petitioners was from 10 years ago, and Petitioners have provided no evidence suggesting that MR has never satisfied that obligation, that it is currently in arrears with regard to any financial obligation regarding the right-of-way, or that it is likely to become so.

STB Order, p. 10.  The STB's conclusion that Material Recovery's tax delinquency in 1998 neither served to work an abandonment of the Trail nor was relevant to its current financial situation was neither arbitrary or capricious.  See Jost, 194 F.3d at 90 ("In the absence of any real evidence that the Conservancy was failing to meet, or would fail to meet, its responsibilities, there is no reason to believe that the presumption of financial fitness had been rebutted.").


**B.     Denial of Oral Hearing and Discovery**

Count II of the Petition alleges that the STB violated the Due Process clause of the United States Constitution and their own regulations by arbitrarily and capriciously denying Plaintiffs' request for discovery and an oral hearing.  We disagree.

The decision whether to grant an oral hearing  is generally left to the STB's discretion.  See C & H Transp. Co., Inc. v. I.C.C., 704 F.2d 834, 848 (5th Cir. 1983) (citing Trailways, Inc. v. I.C.C.,

681 F.2d 252, 254 (5ᵗʰ Cir. 1982)).  "There is no absolute right to a hearing before the [STB]."

Amador Stage Lines, Inc. v. United States, 685 F.2d 333, 335 (9ᵗʰ Cir. 1982).  The applicable federal

regulation, 49 C.F.R. § 1112.1, provides that a proceeding before the STB "may be heard under

modified procedure when it appears that substantially all material issues of fact can be resolved

through submission of written statements, and efficient disposition of the proceeding can be

accomplished without oral testimony."  As such, the STB's "policy is not to grant an oral hearing

in every case though there may be disputed issues of fact."  C & H Transp, 704 F.2d at 848.  Indeed,

the STB "may deny an oral hearing even where material facts are disputed so long as the disputes

may be adequately resolved by the written submissions."  Amador, 685 F.2d at 335 (citing Bonney

Motor Express, Inc. v. United States, 640 F.2d 646, 650 (5ᵗʰ Cir. 1981)).  Similarly, "the conduct and

extent of discovery in agency proceedings is a matter ordinarily entrusted to the expert agency in the

first instance and will not, barring the most extraordinary circumstances, warrant the Draconian

sanction of overturning a reasoned agency decision."  Trailways, 766 F.2d 1546.

Plaintiffs contend that the well-established principles outlined above are inapplicable

because each of the cited cases involve situations where the STB's role is merely ministerial, such

as during the issuance of a NITU or CITU.  In contrast, Plaintiffs assert that the STB's 2008 decision

required a factual examination of the trail sponsor's alleged noncompliance with regulations, a

situation warranting more extensive factual examination and analysis.  Plaintiffs argue that the

aforementioned "modified procedure" which allows the STB to resolve factual determinations

through written submissions is inappropriate in such circumstances.  The sole case cited by Plaintiffs

in support of this proposition, however, is readily distinguishable.

In Water Transport Ass'n v. I.C.C., 722 F.2d 1025 (2ⁿᵈ Cir. 1983), the Second Circuit

considered a challenge to various rules promulgated by the I.C.C. relative to the interpretation of rail

transportation contracts. In striking down the rules as overly restrictive, the Second Circuit noted that

"[d]iscovery must be allowed where a contract affects a party with standing to challenge it."  Id. at

1032.  Plaintiffs seize upon this language in an attempt to support the contention that discovery *must*

be permitted in an STB action whenever a party has standing and raises questions pertaining to the financial or legal fitness of a trail sponsor.  We do not find Water Transport supports that broad proposition.  To state the obvious, Water Transport was not a railbanking case.  Moreover, at least one other circuit has previously stated (albeit in dictum) that "nothing in the Trails Act . . . requires the Board to license petitioners to engage in discovery of the financial fitness of potential trail sponsors."  Jost, 194 F.3d at 90 n. 15.

Here, the STB explained their denial of discovery and an oral hearing by noting that the parties had already submitted "extensive information in their filings" and that the issues could "be adequately considered and resolved based on written submissions."  STB Decision, p. 5; see also Idaho Northern, 3 S.T.B. 50 (finding "no basis for oral hearing" where "[a] thorough and accurate record has already been developed by the parties.").  The STB also noted that Plaintiffs' request for discovery did not indicate what additional material they sought to obtain or which matters in dispute were so complex as to require an oral hearing to sort out.  Id.  Moreover, as we noted in our previous opinion, the STB already had the benefit of its own institutional familiarity with these proceedings based upon the events leading to the 1990 and 1997 Orders.  As such, the STB's discretionary decision to rely upon the written submissions of the parties to resolve any factual discrepancies was not an abuse of discretion or otherwise arbitrary or capricious.

### C.    Failure to Reopen the 1990 and 1997 Orders

In Count III of the Petition, Plaintiffs allege that the STB improperly refused to reopen its 1997 Order which held that the Trail had been properly railbanked in 1990.  The fundamental premise for the Plaintiffs' request to reopen is the Plaintiff's contention that, prior to 1990, the various properties comprising the Trail had been legally abandoned under Pennsylvania state law such that Plaintiffs' reversionary interests were triggered.  No new evidence or allegations of changed circumstances were offered in support of this argument before the STB.  Consequently, because the ICC had previously determined in 1990 that the Trail had not been abandoned and the

16

STB rejected the same assertions advanced by the Plaintiffs here in 1997, the STB properly concluded that the basis for the Plaintiffs' request to reopen was based on a claim of material error.

As noted above, a refusal to reopen is subject to review only where based upon "new evidence or changed circumstances." Friends of Sierra Railroad, 881 F.2d at 666. Where a motion to reopen is based only on material error, it "places before the courts precisely the same substance that could have been brought there by appeal from the original order," and, therefore, the STB's refusal to reopen on that ground is not subject to review. Id. (citing BLE, 482 U.S. at 281-82) ("[T]he agency's refusal to go back over ploughed ground is nonreviewable"). In BLE, the I.C.C. had issued an order giving permission for various railroad carriers s to conduct operations using the railroad tracks of a third party railroad company. BLE, a railroad engineers' union, filed a petition asking the I.C.C. to clarify whether railroads could use their own crews on the new railway routes. The I.C.C. denied the petition. Shortly thereafter, BLE filed a motion for reconsideration, asserting that the I.C.C. had committed material error in denying the petition to clarify. The Supreme Court upheld the I.C.C.'s subsequent refusal to reconsider its previous decision, holding that, "where a party petitions an agency for reconsideration on the ground of 'material error,' i.e., on the same record that was before the agency when it rendered its original decision, 'an order which merely denies rehearing of ... [the prior] order is not itself reviewable.' Id. (quoting Microwave Communications, Inc. v. FCC, 515 U.S. 385, 387, n. 7 (D.C. Cir. 1974)). See also Friends of Sierra Railroad, 881 F.2d at 668-69 (concluding that each ground for review of an I.C.C. order rested on claims of material error and, therefore, the I.C.C.'s refusal to reopen on the basis of those claims could not be reviewed).

Here, no new evidence or changed circumstances are alleged with regard to Count III of the Petition. As such, review of the STB's refusal to reopen is precluded by the Supreme Court's holding in BLE.

Plaintiffs acknowledge the general principle that an agency's refusal to reopen a claim based upon material error is not subject to review, but contend that this principle is inapplicable here

17

because the STB *did* reopen the railbanking proceeding in order to allow Materials and NWPTA to transfer trail sponsorship. (Memorandum in Reply to Brief of Surface Transportation Board, p. 41) (emphasis added). Plaintiffs seize upon language in BLE to the effect that, "[w]hen the [STB] reopens a proceeding for any reason and, after reconsideration, issues a new and final order setting for the rights and obligations of the parties, that order - even if it merely reaffirms the rights and obligations set forth in the original order is reviewable on its merits." BLE, 482 U.S. at 278. Pointing to language in the 2008 STB Order indicating that "Docket No. AB-88 (Sub-No.5X) will be reopened to the limited extent of substituting NWPTA for MR as the interim trail sponsor," see STB Order, p. 11, Plaintiffs conclude that this limited reopening to substitute trail sponsors was sufficient to render the entire proceeding reviewable on its merits.

In support of this proposition, Plaintiffs cite Friends of the Atglen-Susquehanna Trail, Inc. v. S.T.B., 252 F.3d 246 (3rd Cir. 2001). In Atglen, the ICC had issued an order in 1990 authorizing abandonment of a railway line on the condition that the railroad preserve 83 historically significant bridges on the line for a period of time pending completion of an historic preservation review pursuant to § 106 of the National Historic Preservation Act. While that lengthy review was ongoing, a group known as Friends of the Atglen-Susquehanna Trail ("FAST") petitioned the STB in 1996 to reopen the proceedings and broaden the scope of the historical designations to encompass the entire railway branch, rather than just the bridges. In October, 1997, the STB issued a decision wherein the agency reopened the proceeding, denied FAST's petition to expand the scope of the historical designations, and modified its previous order to *narrow* the historical designation to encompass only 32 bridges on the line and 36 archaeological sites near bridges as potentially eligible for listing as historical properties. FAST petitioned for reopening and reconsideration and in August, 1999, the STB denied the motion. Id. at 256-59.

On appeal, the STB, citing BLE, argued that its refusal to reopen the 1997 Order was not subject to review. The STB contended that, since the proceeding had not been reopened in its entirety, but rather, "was reopened only for the limited purpose of narrowing the scope of the historic

condition," a review of all issues relative to their previous order was precluded.  Id. at 260.  The Third Circuit disagreed, holding that by virtue of the STB's decision in 1997 to reopen the proceeding, even if only to narrow the scope of the historical designations, a review of the previous order of the STB for all purposes was appropriate.  The Atglen Court explained:

> Reopening in this case, even if only to narrow rather than expand the original identification decision, makes the issues of identification reviewable.  The STB cannot claim that identification was complete prior to 1997, yet still reopen the proceeding in order to consider some aspect of identification.  That further consideration is subject to review, both as to whether it was proper to narrow the scope of the properties to be protected and also as to whether it was improper not to expand the scope of the protected properties.  In short, the STB's explicit order to reopen this proceeding meant reopening for all purposes, thereby bringing the issue of identification back into play and making it subject to review at this time.

Atglen, 252 F.3d at 260.

Unlike the STB's action in Atglen, the STB in the present case consistently and uniformly declined to revisit *any* aspect of the primary issue raised by Plaintiffs - the alleged abandonment of the Trail and reversion of the property.  See STB Order, p. 8 ("In sum, none of Petitioners' arguments warrant reopening the 1997 Board Order on the ground of material error . . .").  The STB completely denied relief in the Declaratory Judgment action, STB Finance Docket No. 35082, without reopening or amending the 1997 Order in any respect.  See STB Order, p. 12. The STB's decision to utilize a single order for administrative convenience to reopen Docket No. AB-88 (Sub-No. 5X) for the singular purpose of substituting one trail sponsor for another was a purely ministerial act that did not touch on the merits whatsoever.[4]

---

[4] In any event, the Atglen Court ultimately concluded that the request to reopen was independently supportable on the basis that new evidence and changed circumstances were alleged.  Id. at 261. As previously discussed, Count III of the Petition is based exclusively on allegations of material error.

In sum, we conclude that the STB's ministerial substitution of one trail sponsor for another in the 2008 Order did not constitute a reopening the proceedings on the merits.  As such, review of Count III is precluded.

## V. CONCLUSION

For the reasons stated above, the Plaintiffs' Petition for Review of STB Decision is denied. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VICTORIA WHEELER, *et al.*,          )
                                     )
                    Plaintiff,       )
          v.                         )          C.A. No. 06-85 Erie
                                     )          District Judge McLaughlin
MATERIAL RECOVERY OF ERIE, INC., *et al.*,  )
                                     )
                                     )
                    Defendants.      )

## ORDER

AND NOW, this 10th day of September, 2009, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiffs' Petition for Review of STB Decision is DENIED and this action is DISMISSED.  The Motions to Dismiss filed by Northwest Pennsylvania Trails Association, Kathy Schreckengost, Pennsylvania Electric Company, Material Recovery, and Richard Sommers are GRANTED, and the Motions to Dismiss for Lack of Jurisdiction filed by Defendants Canadian National Railroad Company and First Energy Corp. are DENIED as moot.


It is so ORDERED.


                                        /s/ Sean J. McLaughlin
                                        United States District Judge


cm: All parties of record. ___

21